**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **TAFT STETTINIUS HOLLISTER** | : | **Case No. 1:16-cv-00648-SJD** |
| **Plaintiff,** | : | **Hon. Judge Susan J. Dlott** |
| **v.** | : | |
| **HWAREH.COM d/b/a HEALTH WAREHOUSE.COM** | : | **DEFENDANT'S MOTION FOR EXTENSION OF TIME TO** |
| | : | **CONDUCT DISCOVERY** |
| **Defendant.** | : | |
| | : | |

Pursuant to Fed. R. Civ. P. Rule 6(b)(1)(A), Defendant, Hwareh.com d/b/a Healthwarehouse.com, respectfully moves this Court for an Extension of Time to file a memorandum in opposition to Plaintiff's Motion for Remand in order to conduct discovery, identify the "general partner(s)" and "limited partner(s)" of the limited partnership, and determine the citizenship of Plaintiff Taft Stettinius & Hollister, LLP. Because a "partner" in a law firm may not qualify as a general or limited partner, as defined by R.C. 1782.01 and Ohio law, additional time is needed to conduct discovery and obtain documents, which are exclusively in the possession of Plaintiff.

Respectfully submitted,

_____
August T. Janszen (0062394)
THE JANSZEN LAW FIRM
4750 Ashwood Drive, Suite 201
Cincinnati, OH 45241
(513) 326-9065 (telephone)
(513) 326-9066 (facsimile)
atjanszen@janszenlaw.com
Attorney for Defendant
Hwareh.com

**JANSZEN LAW FIRM**
**A Legal Professional Association**

**<u>MEMORANDUM</u>**

On June 30, 2016, Plaintiff Taft Stettinius & Hollister, LLP ("Taft") filed a Motion to Remand, asserting that Taft is an Ohio limited partnership and that some of its partners reside in the Commonwealth of Kentucky.  Defendant, Hwareh.com d/b/a Healthwarehouse.com (hereinafter "Defendant"), requests an extension of time to conduct discovery on this factual assertion and determine the identity of the actual "general partner(s)" and "limited partner(s)" under R.C. Chapter 1782 and Ohio law.

An Ohio limited partnership is defined by statute as a "partnership formed by two or more persons *under the laws of this state*, having one or more general partners and one or more limited partners."[1]  In order to qualify as an Ohio limited partnership, "a certificate of limited partnership shall be executed and filed with the secretary of state," setting forth the name and address of each general partner.[2]  If a general partner is added or withdraws, the limited partnership must file an amended certificate with the Ohio Secretary of State within thirty days.[3]

The legal status and actual ownership interest of a "limited partner," however, depends upon the written partnership agreement.  So, for example, the "assignment of a partnership interest does not … entitled the assignee to become, or to exercise any rights of, a partner."[4]  As explained by the Ohio Supreme Court, the Ohio Limited Partnership Statute "permits a general partner of a limited partnership to possess all of

---

[1] R.C. 1782.01(H) (emphasis added).

[2] R.C. 1782.08(A)(3).

[3] R.C. 1782.09(B).

[4] R.C. 1782.40 ("An assignment of a partnership interest does not … entitle the assignee to become, or to exercise any rights of, a partner.")

2

the rights and powers and liabilities of a partner in a partnership without limited partners, but no similar rights and powers are granted to limited partners."[5]

Defendant acknowledges and agrees that, under applicable federal law, a limited partnership is a "citizen" of each state of its general partner(s) and limited partner(s).[6] At the same time, being a "partner" in a law firm does not automatically make one a "general partner" or "limited partner," as defined by Ohio law.[7]

In *Passavant*, the Ohio law firm of Peck, Shaffer & George, L.P. was joined in the action, requiring the trial court to address these issues and the "citizenship" of the limited partnership. The trial court determined that the "partners" in the law firm were merely contract partners, and "not general or limited partners under either Illinois or Ohio law." The *Passavant* court noted that, in order to qualify as a "general partner" or "limited partner," the individual must have an actual *ownership interest*, and directly share in the risk of ownership, not merely be entitled to compensation pursuant to an agreement or contract. The court noted that the law firm's partners "do not share the attributes of a general or limited partner," they "have no investment at risk," and they do not directly participate in the profits and losses, which makes them employees "with a title," and not limited partners, under Ohio statutory law.[8]

---

[5] *Lakeside Ave., L.P. v. Cuyahoga Cty. Bd. of Revision*, 85 Ohio St.3d 125, 127, 707 N.E.2d 472, 1999-Ohio-257 (holding that the limited partner was not an "owner" of partnership property and could not file a real property valuation complaint on behalf of the limited partnership).

[6] *Carden v. Aroma Assoc.*, 494 U.S. 185, 187 (1990); *Hooper v. Wolfe*, 396 F.3d 744, 748 (6th Cir. 2005)

[7] *Passavant Memorial Area Hosp. Assoc. v. Lancaster Pollard & Co.*, U.S. District Court, Case No. 11-CV-3116 (C.D. Ill. April 12, 2012) (attached hereto as Exhibit A)

[8] Id. (An "income partner" of a law firm is not a "limited partner," who would have personal liability for the obligations of the law firm).

3

In application to the case at bar, Taft has not complied with the Ohio Limited Partnership statute.  There is no certificate on record with the Ohio Secretary of State, identifying any "general partner(s)" of the firm or disclosing his or her address, as required by statutory law.[9]  There is nothing publicly available, identifying whether there are any actual "limited partners" of the firm, within the definition of the statute.  Indeed, even the affidavit of Robert Craig, submitted in support of Taft's motion, does not identify himself as either a "general parter" or "limited partner" of the law firm.  The term "equity partner" has only whatever meaning is attributed to this statute in Taft's formal partnership agreement, presumably as amended, together with any related contracts.

In this regard, Defendant requested a copy of the applicable partnership documents on June 29, 2016, one day before the filing of this motion.[10]  No documents have been produced.  Defendant would request additional time to receive, review, and analyze the requested documents, and follow up with depositions (if necessary), to determine the citizenship of the "general partners" and "limited partners" of Taft.

Accordingly, pursuant to Federal Rule 6(b)(1), Defendant asserts that good cause does exist to grant an extension of time to allow for above-referenced discovery and a factual investigation into the identity, status, and citizenship of the actual general partner(s) and "limited partner(s)," as those terms are defined by Ohio law and R.C. Chapter 1782.

---

[9] *See* Taft Filings with Ohio Secretary of State (attached hereto as <u>Exhibit B</u>) (original certificate was filed in 1997, stating that the partnership was located in Cincinnati, Ohio and identifying Charles D. Lindberg as an "Authorized Partner").

[10] *See* Email to Russell Sayre (June 29, 2016) (attached hereto as <u>Exhibit C</u>).

4

Respectfully submitted,

_____
August T. Janszen (0062394)
THE JANSZEN LAW FIRM
4750 Ashwood Drive, Suite 201
Cincinnati, OH 45241
(513) 326-9065 (telephone)
(513) 326-9066 (facsimile)
atjanszen@janszenlaw.com
Attorney for Defendant
Hwareh.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Courts using the Court's CM/ECF system which will send notification of such filing to the counsel of record on this 21st day of July, 2016.

_____
August T. Janszen (0062394)

5

**THE PASSAVANT MEMORIAL AREA HOSPITAL ASSOCIATION, an Illinois not-for-profit corporation, Plaintiff,**

**v.**

**LANCASTER POLLARD & CO., an Ohio corporation; LANCASTER POLLARD ASSET MANAGEMENT, LLC, an Ohio limited liability company; and STEVEN W. KENNEDY, JR., Defendants and Third Party Plaintiffs,**

**v.**

**JASON L. GEORGE and PECK, SHAFFER & WILLIAMS, LLP, Third Party Defendants.**

**No. 11-CV-3116**

**United States District Court, C.D. Illinois, Springfield Division.**

**April 2, 2012**

OPINION

BYRON G. CUDMORE, Magistrate Judge.

This matter comes before the Court on Plaintiff, The Passavant Memorial Area Hospital Association's (Passavant) Motion for Leave to File a Third Amended Complaint (d/e 80) (Motion). Passavant seeks to add direct claims against third party Defendants Peck, Shaffer & Williams, LLP (Peck, Shaffer), and Jason L. George. Peck, Shaffer oppose the Motion on the grounds that the amendment would be futile and that the amendment is an improper attempt to add Peck, Shaffer as a non-diverse party that would destroy diversity jurisdiction. Peck, Shaffer disputes whether its joinder would destroy diversity, but argues that if the Court would so find, then the joinder is improper. Passavant argues that the claims against George and Peck, Shaffer are not futile and that joinder is proper even though joinder will destroy diversity jurisdiction. As explained below, Passavant's claims against George and Peck, Shaffer are not futile, and Peck, Shaffer's joinder will not destroy diversity. Thus, the Motion is ALLOWED.

BACKGROUND

A Original Complaint

Passavant's original Complaint alleges claims against Defendants Lancaster Pollard & Co., Lancaster Pollard Asset Management LLC (collectively Lancaster), and Steven Kennedy. Notice of Removal (d/e 1), Exhibit 1, Complaint and Request for Jury Trial (Complaint). Passavant alleges that it is a not-for-profit corporation located in Jacksonville, Illinois. Complaint, ¶ 1. Lancaster provides financial advisory and bond underwriting services. Lancaster is located in Columbus, Ohio. Kennedy is a Vice President and investment banker at Lancaster. Kennedy is a resident of Ohio.

Passavant alleges that the Defendants acted as Passavant's financial advisor and bond underwriter. Attached to the Complaint is the Investment Advisory Agreement between Lancaster and Passavant. Complaint, Exhibit E, Lancaster Pollard Investment Advisory Group Investment Advisory Agreement dated December 14, 2006 (Lancaster Agreement). Under the Lancaster Agreement, Lancaster provided financial advisory and asset management services to Passavant. Lancaster Agreement, ¶ 1.[1] The Lancaster Agreement set forth Lancaster's fiduciary relationship with Passavant:

7. Fiduciary Responsibilities. It is agreed that the sole standard of care imposed upon [Lancaster's Investment Advisory Group] by this Agreement is to act with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent investor acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims.

Lancaster Agreement, ¶ 7. Defendant Kennedy managed Lancaster's relationship with Passavant. Complaint, ¶ 5.

Defendants also provided bond underwriting services in connection with a bond issue in 2006. Id . ¶ 8. As part of the bond issue, and upon Kennedy's advice, Passavant entered into a bond interest rate swap agreement (Passavant Swap Agreement) with Lehman Brothers Special Financing, Inc. (Lehman), on September 21, 2006. The Swap Agreement was a hedge agreement that limited Passavant's exposure to changes in interest rates. Id . ¶¶ 11-12.

On September 15, 2008, Lehman filed bankruptcy. On October 1, 2008, Lancaster and Kennedy allegedly prepared letters for Passavant's signature giving Lehman notice that the filing of bankruptcy constituted a default under the Passavant Swap Agreement. Lancaster and Kennedy allegedly instructed Passavant to sign the prepared letter and to send the letter by facsimile transmission (fax) to Lehman. Passavant did so. Id . ¶ 20.

On October 21, 2008, Lancaster and Kennedy allegedly prepared a letter for Passavant's signature notifying Lehman



EXHIBIT A

that the Passavant Swap Agreement was terminated due to the default. Id . ¶ 22. Lancaster and Kennedy allegedly instructed Passavant to sign the prepared letters and fax the letter to Lehman. Passavant did so. Id . ¶ 22.

On March 30, 2009, Lehman asserted that it had no record of receipt of a notice from Passavant terminating the Passavant Swap Agreement. Lehman asserted that notice by fax was improper because the Passavant Swap Agreement stated that notices must be mailed and cannot be sent by fax. Id . ¶¶ 27-31. Passavant settled the dispute with Lehman by paying $2, 975, 000.00. Id . ¶ 36. Passavant's original Complaint sought to recover the $2, 975, 000.00, plus punitive damages, from Lancaster and Kennedy under various theories. Id . Counts I-V.

B. Procedural History

Passavant filed this action in Morgan County, Illinois, Circuit Court against Defendants Lancaster and Kennedy. The Lancaster Defendants removed this matter to this Court under this Court's diversity removal jurisdiction. Notice of Removal (d/e 1), Exhibit 1, Complaint and Request for Jury Trial (Complaint). Lancaster and Kennedy then filed a third party action against their attorneys Peck, Shaffer and George. George is a partner in Peck, Shaffer. Third-Party Complaint and Jury Demand (d/e 7) (Third-Party Complaint).[2] George is a resident of Ohio.

Peck, Shaffer has several offices, including one in Chicago, Illinois. In 2011, Peck, Shaffer had two "contract partners" at the Chicago office, George D. Buzard and Thomas C. Smith. As contract partners, Buzard and Smith owned no equity interest in the partnership, they did not share in the profits or losses of the partnership, they had no authority to participate in the management of the partnership, and they were paid income fixed by contract. Memorandum of Peck, Shaffer & Williams LLP and Jason L. George, Esq. Opposing the Motion of the Passavant Memorial Area Hospital Association to File Third Amended Complaint (d/e 82) (Response), Attached Affidavit of Thomas Freeman, ¶¶ 6-7. Smith became an equity partner on January 1, 2012. Response, at 13 n.7.

On August 1, 2011, Passavant filed an Amended Complaint in which Passavant asserted claims directly against Peck, Shaffer and George. Amended Complaint and Request for Jury Trial (d/e 30). George and Peck, Shaffer moved to strike the Amended Complaint because the time to amend as of right had passed, and Passavant did not secure leave to amend. Motion of Peck, Shaffer & Williams LLP to Strike the Amended Complaint (d/e 31) (Motion to Strike); see Fed.R.Civ.P. 15(a). The Court allowed the Motion to Strike because Passavant failed to secure leave to amend, but the Court gave Passavant leave to file its Amended Complaint. Text Order entered September 30,

3011 (Text Order). Passavant filed its Second Amended Complaint and Request for Jury Trial (d/e 60) (Second Amended Complaint) on November 21, 2011.

On December 5, 2011, Peck, Shaffer and George moved to reconsider the Text Order because Peck, Shaffer wished to oppose granting Passavant leave to amend. Motion of Peck, Shaffer & Williams LLP and Jason L. George, Esq. to Reconsider the September 30, 2011 Text Order Granting Leave for the Passavant Memorial Area Hospital Association to File an Amended Complaint Adding Peck, Shaffer & Williams LLP and Jason L. George Esq., as Defendants (d/e 65) (Motion to Reconsider).

On January 20, 2012, the Court allowed the Motion to Reconsider and struck the Second Amended Complaint. The Court granted Passavant leave to file a motion for leave to file an amended complaint. Opinion entered January 20, 2012 (d/e 78), at 8. Passavant has now filed the Motion. Peck, Shaffer and George have filed their opposition to the Motion. Memorandum of Peck, Shaffer & Williams LLP and Jason L. George., Esq. Opposing the Motion of the Passavant Memorial Area Hospital Association to File a Third Amended Complaint (d/e 82). The Lancaster Defendants have elected not to respond to the Motion and so are deemed to have no opposition to the Motion. Local Rule 7.1(B)(2).

C. Proposed Third Amended Complaint

Passavant seeks to amend the Complaint to add claims against Peck, Shaffer and George. The proposed Third Amended Complaint alleges that George contacted Lancaster to provide legal advice to Lancaster's clients, including Passavant, related to terminating swap agreements with Lehman including the Passavant Swap Agreement. Motion, Exhibit A, Third Amended Complaint and Request for Jury Trial (Third Amended Complaint), Count VI. The Third Amended Complaint alleges that George developed the notices and the procedure used to send notice of termination to Lehman Brothers. The Third Amended Complaint alleges that George knew that his advice was intended to benefit Passavant as a client of Lancaster and that Passavant would likely rely on that advice. The Third Amended Complaint alleges that Passavant knew that the advice came from Lancaster's attorney. The Third Amended Complaint alleges that Passavant paid Lancaster $5, 000.00 for the termination notice and advice, and Lancaster, in turn, paid the $5, 000.00 to Peck, Shaffer. Third Amended Complaint, ¶¶ 82-89.

The Third Amended Complaint alleges that Passavant knew it was paying for legal advice and that it relied on that advice. The Third Amended Complaint alleges that George knew that the advice would be relied upon by Passavant.

The Third Amended Complaint alleges that, as a result, Passavant had an attorney-client relationship with George. The Third Amended Complaint alleges that George breached the duty of care in giving incorrect advice on the correct manner to send notice of termination to Lehman, and that as a result of that breach, Passavant suffered damages by having to pay Lehman $2, 975, 000.00. Third Amended Complaint, ¶¶ 91-95. The proposed Third Amended Complaint alleges a claim against Peck, Shaffer on a theory of principal-agency liability because George is a partner in Peck, Shaffer. Third Amended Complaint, Count VII.

ANALYSIS

Leave to amend pleadings is to be freely given when justice so requires. Fed.R.Civ.P. 15(a)(2). The Court may deny leave to file an amendment to a complaint when the amendment would be futile. Foman v. Davis , 371 U.S. 178, 182 (1962). In this case, the amendment does not appear to be futile.

To allege a claim for legal malpractice, Passavant must allege: (1) an attorney-client relationship; (2) a professional duty arising from that relationship; (3) breach of that duty; (4) proximate cause; and (5) damages. Shoemaker v. Gindlesberger , 118 Ohio St.3d 226, 228, 887 N.E.2d 1167, 1169-70 (Ohio 2008); Belden v. Emmerman , 203 Ill.App.3d 265, 268, 560 N.E.2d 1180, 1181 (Ill.App. 1st Dist. 1990). Passavant sufficiently alleges an attorney-client relationship between itself and George. George provided the advice directly to Lancaster, which in turn, transmitted the advice to Passavant. Passavant paid Lancaster, which in turn, paid George. Passavant alleges that George performed the services knowing that the advice would be communicated to Lancaster's clients, including Passavant.

The sufficiency of these allegations depend to some degree on whether Ohio or Illinois law applies to the question of whether an attorney-client relationship exists.[3] Under Illinois law, an attorney owes a duty to a third party, such as Passavant, when "the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." Pelham v. Gresheimer , 92 Ill.2d 13, 21, 440 N.E.2d 96, 100 (Ill. 1982). The Illinois Supreme Court specifically rejected the requirement that the third party demonstrate that it was in privity with the direct client of the attorney. Pelham , 440 N.E.2d at 99. Passavant alleges that Lancaster hired George to provide advice on how to terminate swap agreements for the benefit of Lancaster's clients including Passavant. Under the Illinois Supreme Court's decision in Pelham, Passavant sufficiently alleges that George's attorney-client relationship with Lancaster extended to Passavant.

Ohio requires privity between the attorney's client (in this

case, Lancaster) and the third party (in this case, Passavant), to extend the attorney-client relationship to the third party,

[A]n attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed.

Simon v. Zipperstein , 32 Ohio St.3d 74, 76, 512 N.E.2d 636, 638 (Ohio 1987).

The facts alleged, when read favorably to Passavant, plausibly show that Passavant was in privity with Lancaster because Lancaster owed Passavant a fiduciary duty as its financial advisor. An attorney's client and a third party to whom the client owes a fiduciary duty, "are in privity... such that an attorney-client relationship established with the fiduciary extends to those in privity therewith regarding matters to which the fiduciary duty relates." Arpadi v. First MSP Corp. , 68 Ohio St.3d 453, 458, 628 N.E.2d 1335, 1339 (Ohio 1994).[4] Paragraph 7 of the Lancaster Agreement, quoted above, sets forth the standard of care Lancaster was required to meet in fulfilling its fiduciary duty to Passavant.[5] Thus, the Third Amended Complaint plausibly alleges that the attorney-client relationship between Lancaster and George extended to Passavant by virtue of Lancaster's fiduciary obligations to Passavant under the Lancaster Agreement.

The exact scope of Lancaster's duties under the Lancaster Agreement is a factual issue. At this point, the allegations plausibly show that Lancaster's fiduciary obligations extended to advising Passavant on the proper procedures to terminate the Passavant Swap Agreement when Lehman filed bankruptcy. As a result, the Third Amended Complaint alleges an attorney-client relationship between Passavant and George under either Illinois or Ohio law.[6]

Passavant alleges the remaining elements of its claim against George. Passavant alleges that George had a duty to provide proper advice; George breached that duty by incorrectly advising Passavant to give notice by fax; the breach of duty was the proximate cause of failure of Passavant's attempt to terminate the Passavant Swap Agreement; and Passavant suffered injury thereby.

Peck, Shaffer and George argue that George's alleged breach of duty did not cause any injury. They argue that, under applicable New York law, the notice was effective upon receipt regardless of the terms of the Passavant Swap Agreement. They further argue that notice by fax was proper for termination under a separate clause in the Passavant Swap Agreement unrelated to the default clauses.

Both of these arguments assume that Lehman actually received the fax notice. The cases cited by Peck, Shaffer

and George hold that actual notice is sufficient even if the notice does not comply with a contractual notice provision. Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey , 706 F.Supp.2d 350, 360 (S.D.N.Y. 2009). The Passavant Swap Agreement also allows notice by fax in circumstances other than notices of default and termination based on default. Notice by fax, however, is effective upon receipt by the "responsible employee" and the sender has the burden to prove receipt and that burden "will not be met by a transmission report generated by the sender's facsimile machine." Complaint, Exhibit B, ISDA Master Agreement, ¶ 10(a)(iii). Lehman denied ever receiving the faxed notices from Passavant. Third Amended Complaint, ¶¶ 31-32, 35. Thus, the Third Amended Complaint plausibly alleges that the notice to Lehman was not effective under any circumstances, and the ineffective notice was the proximate cause of Passavant's injury.[7] The Third Amended Complaint is not futile.

The Court may still deny the Motion under certain circumstances if joinder of Peck, Shaffer and George as defendants would destroy diversity. When joinder of a nondiverse party would destroy removal diversity subject matter jurisdiction, this Court may either deny joinder or permit joinder and remand the case to state court. 28 U.S.C. § 1447(e); Schur v. L.A. Weight Loss Centers, Inc. , 577 F.3d 752, 759 (7th Cir. 2009). Passavant argues that the proposed Third Amended Complaint would destroy diversity because Passavant and Peck, Shaffer are both citizens of Illinois for purposes of diversity jurisdiction. Passavant argues that the Court should nonetheless allow joinder under the relevant considerations and remand the case. See Schur , 577 F.3d at 759.

This Court has carefully considered the matter and concludes that joinder will not destroy diversity. The relevant point in time to determine whether adding a party will destroy diversity is the date that the amended pleading is filed adding the party as a defendant. Lewis v. Lewis , 358 F.2d 495, 501-02 (9th Cir. 1966); China Basin Properties, Ltd. v. Allendale Mut. Ins. Co. , 818 F.Supp. 1301, 1303 (N.D. Cal. 1992); 678> akes v. MacArthur Co., 2010 WL 1286403, at *2 (W.D. Wisc. March 26, 2010); Royal Travel, Inc. v. Shell Management Hawaii, Inc., 2009 WL 2025320, at *2 (D. Hawaii July 10, 2009). Once the Court has diversity jurisdiction, subsequent changes in a party's status will not affect that jurisdiction. Freeport-McMoRan, Inc. v. K N Energy, Inc. , 498 U.S. 426, 428-29 (1991). In this case, Passavant properly filed the Second Amended Complaint on November 21, 2011, pursuant to this Court's Text Order entered September 30, 2011. This portion of the September 30, 2011, Text Order was later vacated, but Passavant was given leave to file this Motion to pursue the issue. The Court, therefore, did not dismiss the claims entirely, but retained jurisdiction to decide whether to allow Passavant to proceed on the claims.

The relevant date, therefore, should be November 21, 2011, the date that Passavant first properly filed the claim against Peck, Shaffer.

On November 21, 2011, Peck, Shaffer was a limited liability partnership. The citizenship of a partnership for diversity purposes is the citizenship of every general partner and limited partner. Carden v. Arkoma Associates , 494 U.S. 185, 187 (1990). Buzard and Smith were contract partners in the Chicago office. The Court does not consider Smith's subsequent change in status to the position of equity partner on January 1, 2012, because the subsequent change in status does not affect diversity jurisdiction. See Freeport-McMoRan, Inc. , 498 U.S. at 428-29.

Peck, Shaffer's contract partners were not general or limited partners under either Illinois or Ohio law. General and limited partners share a basic characteristic-they share in the ownership of the enterprise and in the profits and losses. The Illinois Supreme Court explains that, "A limited partnership is in the nature of an investment. Through his contribution, the limited partner becomes entitled to share in the profits and losses of the partnership, though his share of the losses will not exceed the amount of capital initially contributed by him to the enterprise." Kramer v. McDonald's System, Inc. , 77 Ill.2d 323, 332, 396 N.E.2d 504, 508 (Ill. 1979). The Ohio limited partnership statute states that a partnership interest, "means a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets." Ohio Rev. Code § 1782.01(L). Similarly general partners share in the ownership of the enterprise. Grendell v. Ohio Environmental Protection Agency , 146 Ohio App.3d 1, 13, 764 N.E.2d 1067, 1077 (Ohio App. 9th Dist. 2001); Cook v. Lauten , 1 Ill.App.2d 255, 259, 117 N.E.2d 414, 415 ( Ill.App. 1st Dist. 1954). General and limited partners share in the risk of ownership. General partners have unlimited liability while limited partners' liabilities are limited to their investments, but both share some risk. Allen v. Amber Manor Apartments Partnership , 95 Ill.App.3d 541, 547, 420 N.E.2d 440, 445 (Ill.App. 1st Dist. 1981); Heinz v. Steffen , 112 Ohio App.3d 174, 183, 678 N.E.2d 264, 270 (Ohio App.2d Dist. 1996); Hommel v. Micco , 76 Ohio App.3d 690, 696, 602 N.E.2d 1259, 1262 (Ohio App. 11th Dist. 1991).

General partners share additional attributes. They participate in the management of the partnership. They are agents of the partnership and the other partners, and they owe fiduciary duties to the other partners. See 805 ILCS 206/401(f) ("each partner has equal rights in the management and conduct of the partnership business"); Ohio Rev. Code § 1776.41(F) (same); Grendell , 146 Ohio App.3d at 13, 764 N.E.2d at 1077 (partners share mutuality of agency and mutuality of control); Hommel v. Micco , 76 Ohio App.3d 690, 696, 602 N.E.2d 1259, 1263 (Ohio App.

11th Dist. 1991) (general partners have ultimate control over decisions made in the ordinary course of business); ARTA Group, Inc. v. Salomon Bros. Holding Co., Inc., 288 Ill.App.3d 467, 470-71 680 N.E.2d 769, 772 (Ill.App.2d Dist. 1997) (general partner owes fiduciary duty to partnership); Saballus v. Timke, 122 Ill.App.3d 109, 116, 460 N.E.2d 755, 760 ( Ill.App. 1st Dist. 1983) (partners are mutual agents and fiduciaries of each other).

Peck, Shaffer's contract partners do not share the attributes of a general or limited partner. They are not owners of Peck, Shaffer. They have no investment at risk. They do not share in the profits or losses. They do not participate in management of the partnership. Their compensation is determined by contract. They are employees or independent contractors with a title. They are not partners.

An Illinois court has directly addressed the issue. In Davis v. Loftus, 334 Ill.App.3d 761, 778 N.E.2d 1144, 1152 (Ill.App. 1st Dist. 2002), the Illinois Appellate Court found that an "income partner" in a law firm was not a partner, and so, had no personal liability for the obligations of the partnership. The Davis Court explained that Illinois looked to the substance of the relationship not the form. Id. at 1151. Similar to the "contract partners" in this case, the "income partner" in Davis did not share in profits or losses, did not participate in management, and was paid a salary plus bonus. The Davis court concluded that such an "income partner" was not a partner. Id. at 1152. Similarly, the contract partners Buzard and Smith were not partners under Illinois law. Given the similarities of Illinois and Ohio partnership law, the Court finds that the Ohio Supreme Court would reach the same conclusion.

The District Court in Massachusetts has specifically addressed whether a contract partner is a partner for purposes of determining citizenship for diversity jurisdiction. In Morson v. Kreindler & Kreindler, LLP, 616 F.Supp.2d 171, 173 (D. Mass. 2009), the plaintiff Morson brought an action in Massachusetts state court against the law firm of Kreindler & Kreindler, LLP (Kreindler). Morson was a citizen of Massachusetts, and Kreindler was a New York limited liability partnership. Kreindler removed the case to the District Court of Massachusetts based on diversity removal jurisdiction. Morson moved to remand because Kreindler had an office in Boston. Anthony Tarricone was the resident agent for Kreindler in Massachusetts and a contract partner. Like Buzard and Smith, Tarricone had no ownership interest in the partnership, no right to share in profits and losses, no rights to participate in policymaking for the business. Tarricone was paid a fixed salary. Id. at 172. The Court found that Tarricone was really an employee, and as an employee, "his citizenship is irrelevant for purposes of diversity analysis." Id. at 173. The Morson Court applied Massachusetts and New York law, but the principals of New York and

Massachusetts partnership law were substantially similar to the Illinois and Ohio principals discussed above. See Id. at 172-73. This Court agrees with the analysis in Morson. Buzard and Smith were employees or contractors, not partners under either Illinois or Ohio law. Their citizenship is not relevant to determining Peck, Shaffer's citizenship.

It is conceivable that Peck, Shaffer could be estopped under some circumstances from denying that Buzard and Smith were partners of the firm.[8] See Morson , 616 F.Supp.2d at 173. No possibility of estoppel exists here, however. Passavant did not rely on any representations about the partnership status of Buzard and Smith; Passavant did not even select George or Peck, Shaffer to provide legal advice. Furthermore, Passavant's theory of liability against Peck, Shaffer is principal, agent liability for the actions of George. Buzard and Smith were not involved in the matter so their status is irrelevant.

Thus, Peck, Shaffer had no partners who were citizens of Illinois on November 21, 2011. Passavant's joinder of Peck, Shaffer as an additional defendant does not destroy diversity. Moreover, as explained above, the claims in the Third Amended Complaint are not futile. Therefore the Motion is allowed.

WHEREFORE, Passavant Memorial Area Hospital Association's Motion for Leave to File a Third Amended Complaint (d/e 80) is ALLOWED. The Clerk is directed to file the Third Amended Complaint attached to the Motion. Defendants are directed to file their responsive pleadings by April 20, 2012.

---------

Notes:

[1] Lancaster Investment Advisory Group is a registered trade name of Defendant Lancaster. Complaint, ¶ 4.

[2] The Third-Party Complaint also named Peck, Shaffer associate Allison Binkley as a defendant. The claims against her have been dismissed. Agreed Order Dismissing Third-Party Defendant Allison M. Binkley Without Prejudice (d/e 59).

[3] The parties disagree on the applicable law. See Memorandum of Peck, Shaffer & Williams LLP and Jason L. George, Esq. Opposing the Motion of Passavant Memorial Area Hsopital Association to File a Third Amendd Complaint (d/e 82) (Peck, Shaffer Response), 6; Plaintiff, The Passavant Memorial Area Hospital Association's Response to Third-Party Defendants, Jason L. George and Peck Shaffer & Williams, LLP's Motion to Dismiss the Second Amended Complaint (d/e 75), at 7 n.3. The Court does not address the conflicts of law issue at this stage because the parties have not briefed the issue, and the

issue does not affect the outcome of the Motion. The differences in Illinois and Ohio law regarding establishing an attorney-client relationship, however, may affect the outcome of the claim later in the proceeding.

[4] The cases on which Peck, Shaffer and George rely do not address the issue of fiduciary relationships establishing privity between the client and the third party. See e.g., New Destiny Treatment Center, Inc. v. Wheeler, 129 Ohio St.3d 39, 44, 950 N.E.2d 157, 162 (Ohio 2011); Landis v. Hunt , 80 Ohio App.3d 662, 672, 610 N.E.2d 554, 560 (Ohio App. 10th Dist. 1992).

[5] The Third Amended Complaint incorporates the Lancaster Agreement by reference. Third Amended Complaint, ¶ _13, Exhibit E. The Lancaster Agreement, thus, is part of the Third Amended Complaint for all purpose. Fed.R.Civ.P. 10(c).

[6] The Court does not mean to preclude the possibility that privity may also be established on some other basis.

[7] The Third Amended Complaint also alleges that the notices were notice of default and notices of termination for default. Third Amended Complaint, ¶¶ 24-29. These allegations plausibly show that the notices were subject to the provisions in the Passavant Swap Agreement that did not allow notice by fax. These allegations, if true, could plausibly show that the notice was ineffective regardless of the other termination provisions in the Passavant Swap Agreement.

[8] The Court assumes for purposes of argument only that estoppel would be relevant to determine diversity jurisdiction. The issue has not been briefed by the parties, and the Court makes not ruling on this question.

---------

```
OHIO SECRETARY OF STATE                      CHARTER NUMBER: GL000857
PROCESSING STATEMENT                         ROLL AND FRAME: 6112-1543
12/26/97                                        06112-1543

CORPORATION:                      DOCUMENT NUMBER    CODE         FEE
                                  ----------------   ----         ---
TAFT,STETTINIUS & HOLLISTER LLP      97122447501     PLL        85.00
                                     97122447501     MIS        10.00


              067615

RETURN TO: TAFT,STETTINIUS & HOLLISTER         TOTAL :        95.00
           ATTN A S CORWIN
           21 E STATE ST
           COLUMBUS OH 43215                                   0005
```

EXHIBIT B



06112-1544

# The State of Ohio

### Bob Taft

Secretary of State

GL  857

## ❧ Certificate ❧

It is hereby certified that the Secretary of State of Ohio has custody of the Records of Incorporation and Miscellaneous

Filings; that said records show the filing and recording of:  PLL MIS

of:

TAFT,STETTINIUS & HOLLISTER LLP

United States of America
State of Ohio
Office of the Secretary of State

Recorded on Roll 6112 at Frame 1545  of
the Records of Incorporation and Miscellaneous Filings.

Witness my hand and the seal of the Secretary of State at

Columbus, Ohio, this 24TH day of  DEC  ,

A.D. 19 97 .

*Bob Taft*

**Bob Taft**
Secretary of State

06112-1545



Prescribed by
Bob Taft, Secretary of State
30 East Broad Street, 14th Floor
Columbus, Ohio 43266-0418
Form PLL (July 1994)

Approved
Date _____
Fee $85



9712244760l

## APPLICATION FOR REGISTRATION OF A
## REGISTERED PARTNERSHIP HAVING LIMITED LIABILITY

The undersigned, desiring to become a Registered Partnership Having Limited Liability pursuant to Ohio Revised Code Section 1775.61(A), do hereby state as follows:

1.  The name of the partnership is: <u>Taft, Stettinius & Hollister LLP</u>

    _____
    (please see instruction 1 below regarding the name)

2.  Please complete the following appropriate section (*either item 2A or 2B*):

    A.  The address of the partnership's principal office in Ohio is:

        <u>1800 Star Bank Center, 425 Walnut Street</u>
        (street and number)
        <u>Cincinnati</u>, Ohio <u>45202-3957</u>
        (city, village or township)        (zip code)

    *(If the partnership does not have a principal office in Ohio, the following items must be completed)*

    B.  The address of the partnership office is:

        _____
        (street and number)

        _____
        (city, village or township)    (state)    (zip code)

3.  The name and address of a statutory agent for service of process in Ohio is as follows:

    _____
    (name of agent)            (street and number)

    _____, Ohio _____
    (city, village or township)            (zip code)

06112-1546

4.     The number of partners is: _64_____

5.     The business which the partnership engages in is: __general practice____
       ___of law_____

6.     The effective date of this registration is January 1, 1998.
**IN WITNESS WHEREOF**, the undersigned, being either a majority in interest of the
partners, or the duly authorized partner(s) of the partnership, have executed this registration
application this _22nd___ day of ____December_____, 19 _97_ .

                                   __Taft, Stettinius & Hollister LLP____
                                          **(name of partnership)**

Signed: _Charles D. Lindberg_         Signed: _____
         Charles D. Lindberg
Signed: Duly Authorized Partner        Signed: _____

Signed: _____        Signed: _____

Signed: _____        Signed: _____


### INSTRUCTIONS

1.     The name of the registered partnership having limited liability must contain the words
"registered partnership with limited liability" or the abbreviation "P.L.L.".  ORC 1775.62

2.     The registration application must be executed by a majority in interest of the partners
or by one or more partners authorized by the partnership to execute the registration
application. ORC 1775.61(C)

3.     Pursuant to ORC 1775.63, each registered partnership having limited liability must
file an annual report verifying and/or updating the information contained in its application for
registration.
                                   **[Ohio Revised Code Section 1775.61(A)]**

☐ UNIFORM COMMERCIAL
CODE FILING

0€112-1547

☒ CORPORATIONS FILING

## CORPORATIONS ONLY

| ☒ EXPEDITE SERVICE | ☒ PICK-UP | ☐ MAIL |

## CORRESPONDENCE

4

Maria
Hinkle
Check 158013

PLEASE RETURN THE ATTACHED DOCUMENTS TO:

Taft, Stettinius & Hollister
_____
NAME OF YOUR FIRM OR COMPANY

Angela S. Corwin
_____
ATTENTION
21 East State Street
Columbus, Ohio 43215

_____
STREET, CITY, STATE, ZIP CODE

(614) 221-2838
_____
TELEPHONE    NUMBER

## UCC ONLY

| ☐ MAIL | ☐ PICK-UP |

IF NOT CHECKED, IT WILL BE MAILED.





| DATE | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|------|-------------|-------------|--------|-------|---------|------|------|
| 05/28/2015 | 201514801009 | Biennial Report/Limited Liability Partnership (15L) | 25.00 | | | | 0 |

### Receipt
This is not a bill. Please do not remit payment.

TAFT STETTINIUS & HOLLISTER LLP
425 WALNUT STREET
SUITE 1800
CINCINNATI, OH, 45202

# STATE OF OHIO
## CERTIFICATE

### Ohio Secretary of State, Jon Husted

GL857

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**TAFT STETTINIUS & HOLLISTER LLP**

and, that said business records show the filing and recording of:

Document(s)                                                    Document No(s):

**Biennial Report/Limited Liability Partnership**              201514801009
        **Effective Date:  05/28/2015**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the
Secretary of State at Columbus, Ohio
this 28th day of May, A.D. 2015.

*Jon Husted*

**Ohio Secretary of State**



**Form 520 Prescribed by:**

**JON HUSTED**
**Ohio Secretary of State**

Central Ohio: (614) 466-3910
Toll Free: (877) SOS-FILE (767-3453)
*www.OhioSecretaryofState.gov*
*Busserv@OhioSecretaryofState.gov*

Date Electronically Filed: 5/28/2015

# Biennial Report
## (Domestic, Professional Association, Domestic or Foreign LLP)
### Filing Fee: $25

**CHECK ONLY ONE (1) Box**

(1) ☐  Indicate Year [        ]
Biennial Report
of Professional
Association (102-YRA)
(even-numbered years)

List Profession [                    ]

(2) ☒  [ 2015 ]  Indicate Year
Biennial Report
of Limited Liability
Partnership (103-YRL)
(odd-numbered years)

If foreign limited liability
partnership, provide
jurisdiction of formation [            ]

Name of Entity [ TAFT STETTINIUS & HOLLISTER LLP ]

Charter or Registration Number [ GL857 ]

---

**Complete the information in this section if box (1) is checked**

**Shareholders of Professional Association**
Authenticating this form constitutes a certification that all the below listed shareholders are duly licensed or otherwise legally authorized to render the professional services in this state in the profession that is listed above.

Name

Address

[                    ]   [                    ]

[                    ]   [                    ]

[                    ]   [                    ]

[                    ]   [                    ]

---

Form 520

Page 1 of 2

Last Revised: 2/6/12

**Complete the applicable information in this section if box (2) is checked**

Address of the partnership's chief executive office:

425 WALNUT STREET,
Mailing Address

CINCINNATI                          OH          452023557
City                                State       Zip Code

If the chief executive office is not in Ohio, the address of any office of the partnership in Ohio:

Mailing Address

City                                State       Zip Code

If the partnership does <u>not</u> have an office in Ohio, the name and address of the partnership's current agent for service of process:

Name of Agent

Mailing Address

City                                State       Zip Code

---

By signing and submitting this form to the Ohio Secretary of State, the undersigned hereby certifies that he or she has the requisite authority to execute this document.

**Required**
Report must be signed by an officer of the professional association or partner or authorized representative of the partnership.

EDWARD D. DILLER, PARTNER
Signature

By (if applicable)

If authorized representative is an individual, then they must sign in the "signature" box and print their name in the "Print Name" box.

Print Name

If authorized representative is a business entity, not an individual, then please print the business name in the "signature" box, an authorized representative of the business entity must sign in the "By" box and print their name in the "Print Name" box.

Form 520                    Page 2 of 2                    Last Revised: 2/6/12



Form 520 Prescribed by:

**Jon Husted**
**Ohio Secretary of State**
Toll Free: (877) SOS-FILE (877-767-3453)
Central Ohio: (614) 466-3910
www.OhioSecretaryofState.gov
busserv@OhioSecretaryofState.gov
File online or for more information: www.OHBusinessCentral.com

Mail this form to one of the following:
Regular Filing (non expedite)
P.O. Box 788
Columbus, OH 43216

Expedite Filing (Two business day processing time.
Requires an additional $100.00)
P.O. Box 1390
Columbus, OH 43216

## Biennial Report
### (Domestic, Professional Association, Domestic or Foreign LLP)
### Filing Fee: $25

**CHECK ONLY ONE (1) Box**

(1) ☐   Biennial Report
of Professional
Indicate Year   Association (102-YRA)
(even-numbered years)

List Profession [ ]

(2) ☒   2015   Biennial Report
of Limited Liability
· Indicate Year   Partnership (103-YRL)
(odd-numbered years)

If foreign limited liability
partnership, provide
jurisdiction of formation [ ]

Name of Entity   TAFT STETTINIUS & HOLLISTER LLP

Charter or Registration Number   GL857

**Complete the information in this section if box (1) is checked**

**Shareholders of Professional Association**
Authenticating this form constitutes a certification that all the below listed shareholders are duly licensed or otherwise
legally authorized to render the professional services in this state in the profession that is listed above.

| Name | Address |
|------|---------|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Form 520                    Page 1 of 2                    Last Revised: 2/6/12

**Complete the applicable information in this section if box (2) is checked**

Address of the partnership's chief executive office:

425 Walnut Street, Suite 1800
Mailing Address

| Cincinnati | OH | 45202 |
|---|---|---|
| City | State | Zip Code |

If the chief executive office is not in Ohio, the address of any office of the partnership in Ohio:

Mailing Address

| | Ohio | |
|---|---|---|
| City | State | Zip Code |

If the partnership does not have an office in Ohio, the name and address of the partnership's current agent for service of process:

Name of Agent

Mailing Address

| | Ohio | |
|---|---|---|
| City | State | Zip Code |

By signing and submitting this form to the Ohio Secretary of State, the undersigned hereby certifies that he or she has the requisite authority to execute this document.

**Required**
Report must be signed by an officer of the professional association or partner or authorized representative of the partnership.

*Edward D. Dill, Partner*
Signature

By (if applicable)

If authorized representative is an individual, then they must sign in the "signature" box and print their name in the "Print Name" box.

Edward D. Diller, Partner
Print Name

If authorized representative is a business entity, not an individual, then please print the business name in the "signature" box, an authorized representative of the business entity must sign in the "By" box and print their name in the "Print Name" box.

| Form 520 | Page 2 of 2 | Last Revised: 2/6/12 |
|---|---|---|



**From:** **August Janszen** atjanszen@janszenlaw.com
**Subject:** Re: Taft v. HealthWarehouse
**Date:** June 29, 2016 at 5:17 PM
**To:** Sayre, Russell S. sayre@taftlaw.com
**Bcc:** Dan Seliga dseliga@healthwarehouse.com

Russell:

    Again, without discovery, I have no idea who are the general/limited partners of your firm, what contractual agreements are in place, or how this limited partnership is structured, without seeing documentation that is exclusively in the possession of your law firm. If you want to send those documents to me for review, in support of your position that all of your equity partners are "limited partners" within the meaning of the Ohio statute, I will do so quickly and respond back to your request, for what I assume is an agreed order. I agree that it is a subject matter jurisdiction issue. I do not agree that the issue is resolved because some partners live in Kentucky, based upon the prior case.

    In terms of mediators, I would propose maybe Steve Calardo or Carl Stich.

ATJ


**August T. Janszen, Esq.**
The Janszen Law Firm, L.P.A.
4750 Ashwood Drive, Suite 201
Cincinnati, OH 45241
(513) 326-9065 (Office)
(513) 326-9066 (Fax)
(513) 535-5333 (Mobile)
atjanszen@janszenlaw.com

---

*This transmission is intended for the sole use of the individual(s) to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any use, dissemination, distribution, and/or duplication of this transmission by someone other than the intended addressee and/or its designated agent is strictly prohibited. If you have received this transmission by mistake or in error, please notify the Janszen Law Firm immediately by collect call (513) 326-9065, or by reply to this transmission.*

On Jun 24, 2016, at 5:29 PM, Sayre, Russell S. <sayre@taftlaw.com> wrote:

I really think that this is a subject matter jurisdiction issue that needs to be addressed. You can't just allege the citizenship of an LLP; you have to allege the citizenship of its equity partners. The case you sent makes a distinction not between partnerships and LLPs but between equity partners and income or "contract partners." Peck Schaffer's only Illinois partners were contract partners with no management involvement or ownership in the firm - essentially employees whose citizenship does not enter the analysis. I can tell you informally that we have a number of equity partners who are Kentucky citizens. I don't want to file a motion.

On the substantive point, I'll chat with Stuart Dornette and circle back to you.

EXHIBIT C

# Taft /

**Russell S. Sayre** / Partner
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Tel: 513.381.2838 • Fax: 513.381.0205
Direct: 513.357.9304 • Cell: 513.300.9266
**www.taftlaw.com** / sayre@taftlaw.com

**Taft Bio**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** August Janszen [mailto:atjanszen@janszenlaw.com]
**Sent:** Wednesday, June 22, 2016 4:07 PM
**To:** Sayre, Russell S.
**Subject:** Re: Taft v. HealthWarehouse

Hi Russell:

Thanks for the email.

I disagree that there is any defect with the Notice of Removal, but I do acknowledge that I will need to do some discovery on the jurisdictional issue, as I cannot plead anything more specific about your TSH partnership at this point without discovery. My review of the issue indicates that the jurisdictional split discussed below is still unresolved as it relates to limited liability partnerships (as opposed to general or limited partnerships). At least one district court rejected this kind of argument, as it relates to an Ohio limited liability/law firm (see attached).

More substantively, before we get too deep into discovery, motion practice, etc., I would suggest that perhaps we try to mediate the dispute. To be sure, there are some substantive issues underlying this dispute on our side, especially as it relates to work performed for or at the direction of Mike Peppel. But the main issue was and remains that you are demanding an amount of money that Health Warehouse does not have, cannot pay, and cannot be compelled to pay, no matter when or how or in what amount you get a judgment. And TSH has already been offered more (40 cents) than any other creditor. Ultimately, you may get a better result by discounting the account and accepting payment terms (i.e., get some money in the door), rather than spend the next 12-18 months or longer, litigating the case to an uncollectible judgment.

Let me know your thoughts.

ATJ